CHARLES H. D. PAUL and Others *vs.* SUSAN D. OWINGS, JOHN H. OWINGS, Executor of HENRY H. OWINGS, RICHARD B. OWINGS and Others.

*Admissibility of Parol evidence to prove a Collateral or Independent fact, about which the Written agreement is Silent.*

In 1818, P agreed to sell to O certain premises, consisting of a mill seat and adjoining lands, and, in pursuance of the agreement, gave to O the following paper, which was signed by himself and attested by two witnesses: " April 20th, 1818.—I this day have agreed to take five thousand dollars for my right and interest for Guilford Mills, which is now bound by a judgment held by Mr. Richard Owings, and under execution for the same, and all the equitable right, title and interest I have in the land adjoining, which shall be clear of the right of dower." HELD :

That parol testimony was admissible to show the manner or terms of payment of the purchase-money, a collateral, independent fact, about which the paper itself was silent.

APPEAL from the Circuit Court for Howard County, in Equity.

In addition to the facts of the case, to be found in the opinion of the Court, it may be further stated that, in 1848, the heirs of Isaac Paul brought an action of ejectment against James Owings, and, in 1851, obtained a judgment for the land derived from Richard Odle. The defendant appealed; the plaintiffs brought their action for *mesne* profits; the defendant filed his bill to enjoin both suits at law, and prayed a conveyance to him by the heirs of Paul of the two parcels of land referred to in the opinion of the Court; and Paul's heirs filed their cross-bill against James Owings, asking for a specific performance of the agreement of the 20th of April, 1818, by the payment of the $5,000 therein specified, with interest, or, in default thereof, a conveyance of the lands. The Court below, at June term, 1869, decreed a perpetual injunction against further proceedings in the said suits at law, and also

decreed a conveyance of the lands to Henry H. Owings, since deceased, and appointed a trustee to execute the same. From this decree the present appeal was taken.

The cause was argued before BARTOL, C. J., STEWART, BRENT, MAULSBY and ROBINSON, J.

*John S. Tyson* and *Robert J. Brent,* for the appellant.

The instrument of writing of April 20th, 1818, is the written contract of Isaac Paul. "Its character as such is proved by the testimony of two subscribing witnesses, who proved that it was intended as an agreement of sale between Isaac Paul and Richard Owings." *Owings vs. Baldwin & Wheeler,* 8 *Gill,* 352.

It certainly comes within the legal definition of a contract, viz: an agreement whereby one party becomes bound to another to do or omit to do a certain act. *Chit. on Contracts,* 1. After executing and delivering it to Richard Owings, could Isaac Paul have pleaded the Statute of Frauds? It contains the terms of a contract between the parties, and was designed to be the repository and evidence of their final intentions. It therefore comes within the rule stated in 1 *Greenleaf on Ev.,* sec. 275, and within the reason of the rule. *Ibid,* sec. 276.

Parol evidence was inadmissible to alter the effect of said written evidence. Even the act of the parties, and evidence of the construction which they may have put upon the agreement were not admissible. 1 *H. & G.,* 74. The sufficiency of the agreement to take the case out of the Statute of Frauds is an additional reason for excluding the parol testimony. *Roberts on Frauds,* 10. For this reason parol evidence was not admitted to contradict a bill of parcels for goods sold. *Batturs vs. Sellers, et al.,* 6 *H. & J.,* 251. The mode of payment can only be proved by parol when the written agreement is *silent* on that point. *McCreary vs. McCreary,* 5 *G. & J.,* 156.

The proper construction of this written contract entitles the appellants to the sum of $5,000.00, with interest from April 20th, 1818, and the appellees to a conveyance of the legal title of the appellants. The true construction of the agreement is that Paul was to *take* $5,000.00 for his right and interest for the Guilford Mills, not for "the lands and premises," as the appellees feel bound, by consistency, to claim, and this right and interest appear to be only an equity of redemption.

It is to be remembered that the offer was made to and accepted by Richard Owings—the man who held the judgment. This renders the word "*take*," if possible, more conclusive than if the contract had been with a third party. If the understanding had been such as the appellees contend for, the phraseology would have been different.

*James Mackubin,* for the appellees, relied on the opinion of Judge HAMMOND, filed in the Circuit Court.

MAULSBY, J., delivered the opinion of the Court.

In May, 1799, Richard Owings and Isaac Paul purchased from Richard Odle a parcel of land containing one hundred and twenty-seven acres, and it was conveyed to them, as joint tenants, for the consideration of £300, current money. In October of the same year, James Carey conveyed to Richard Owings, in consideration of £1200, another parcel of land containing about thirty-five acres, consisting, principally, of the same tract, Wincasen Neck, mentioned in the deed to Owings and Paul, with the buildings and Mills, &c., thereon, known as Guilford Mills. The business of milling was carried on by Owings and Paul, as partners, for some years thereafter at the Mills, appearing from the deed in evidence, to have been the property of Owings. In 1813, the partnership was dissolved, and Owings agreed to sell to Paul all his interest in the entire property, and delivered possession.

It was assumed in the argument by both parties, that the judgments of Owings against Paul set out in the record, one for the sum of $5,093.33, and the other for $364.50, were recovered on account of the purchase money. It is not clear, nor perhaps material, what was the amount of the purchase money. There is no other proof in regard to it than the judgments. Owings did not convey to Paul. In 1818 Paul signed, and Samuel Brown, Jr., and Basil Owings witnessed, the following paper:

" April 20th, 1818. I this day have agreed to take $5,000 for my right and interest for Guilford Mills—which is now bound by a judgment held by Mr. Richard Owings, and under execution for the same—and all the equitable right, title and interest I have in the land adjoining—which shall be clear of the right of dower."

The possession of the property was delivered by Paul to Owings, who afterwards sold it to Poulton, against whom he recovered a judgment for the purchase money remaining unpaid, under a *fieri facias,* on which the property was subsequently sold by the sheriff, and purchased by James Owings. James Owings filed a bill against Paul's representatives for a conveyance of Paul's interest, and Paul's representatives filed a cross-bill against the executors of Richard Owings to enforce the payment of the $5,000 purchase money mentioned in the paper, and interest. This is the case before the Court, and it depends on the effect of the above recited paper.

The appellants insist that the paper is the written contract of sale, and that parol evidence is inadmissible to prove any fact relative to the contract. They allege in their answer to Owings' bill, and in their cross-bill, that the agreement was that Owings would purchase all Paul's interest in the two tracts referred to, " subject to the judgments in favor of Owings for the sum of $5,000," and in their cross-bill, that " it was arranged and understood between the said Richard

Owings and Isaac Paul, that the said Paul would sell and transfer his whole right and estate in both of the aforesaid two deeds, and the lands thereby conveyed, to the said Richard Owings, subject to the judgments aforesaid, for the clear sum of $5,000, that is to say, it was agreed between said parties that Richard Owings was to release his judgments aforesaid, and proceed no further on them, and to pay the said Paul the clear sum of $5,000."

The paper does not express, unequivocally, the agreement as set out in the answer and cross-bill. It does not disclose, by its terms, the purchaser, or any certain description of the property, nor the manner or terms of payment of the purchase money, as alleged by the appellants or by the appellees.

It is true, as claimed by the appellants, that Owings, in his original bill and in his answer to the cross-bill, relies on the paper as evidence, but at the same time he states that the contract was that the $5,000 was to be applied to and credited on the judgment against Paul. Both parties agree that parol evidence is admissible to shew that Owings was the purchaser, and to describe, with certainty, the property intended to be sold, and the only disputed question is whether that species of proof is admissible to shew the manner or terms of payment of the purchase money; whether, as alleged by one party, it was to be credited on, or applied to the judgment; or, as claimed by the other, Owings was to release his judgments, proceed no further on them, and pay Paul the clear sum of $5,000.

In *Owings vs. Baldwin & Wheeler*, 8 *Gill*, 352, the Court, speaking of this identical paper, says: " this paper of itself, if capable of perpetual preservation, cannot be regarded, either at law or in equity, as transferring any title to the property mentioned therein to Richard Owings, or to anybody else; it is nothing more than the written declaration of Isaac Paul, that he had, on that day, agreed to take for it the sum of money he named. But that Richard Owings, or any other person, was in treaty for its purchase, is a fact of which the

paper, *per se,* furnishes no evidence. The paper alone, as a contract, has no operation, and its character as such is only shewn by the testimony of the two subscribing witnesses, who proved that it was intended as an agreement of sale between Isaac Paul and Richard Owings, and that the $5,000 were to be credited on judgments of Richard Owings against Isaac Paul, under which the property was taken in execution, and about to be sold."

It is contended by the appellants, that the question in this case is not controlled by the opinion of the Court in *Owings against Baldwin & Wheeler,* because the evidence of Brown, one of the witnesses in that case, is not in this, he being dead, and that the testimony of Basil Owings is excepted to in this case, and was not in that. Is the evidence of Basil Owings admissible in this case? would seem to be the only question. He proves that the purchase money was, by the agreement between the parties, to be credited on the judgments, and although Brown proved, in the former case, many other facts tending to establish and confirm this point, still, if it be established by competent evidence, it must be held sufficient until rebutted.

The case of *McCreary vs. McCreary,* 5 *Gill & J.,* 147, seems to be identical with this case on this point. In that case, the defendant offered in evidence a schedule and valuation of sundry articles of personal property, at the foot of which was the following statement made and signed by the appraisers: " The 17th of May, 1830 : Be it remembered, that Benjamin McCreary and James McCreary, both of Harford county, and State of Maryland, having called on us, the subscribers, to value the horses, cattle and hogs of the said Benjamin McCreary, which the said James McCreary is to take, hold and possess as his property, and only use at the above valuation. In witness whereof, we have hereunto subscribed our names this day and date above written," and proved that the articles contained in said schedule were delivered over, at said valuation, to the plaintiff. The plaintiff, James McCreary,

then offered to prove by the appraisers, that at the time the property was appraised and delivered over to him, it was agreed between the plaintiff and defendant, that the value of said property, (expressed in the schedule,) should be applied by the plaintiff to the payment of the outstanding debts of the defendant, but the admissibility of the proof offered was objected to. The Court says, in its opinion, pp. 156, 157: "The appraisers' statement amounts to nothing more than a written declaration that they had been appointed by James and Benjamin McCreary to value the specified property, and that James McCreary had agreed to take it at the valuation so made by them. In what manner the valuation was to be paid, is not stated by the appraisers. It is, therefore, considered, that no principle of law, or rule of evidence, would be infringed or violated by the admission of parol proof to ascertain that fact, about which the statement is perfectly silent. The articles mentioned were to become the property of James McCreary, when paid for at that valuation, but whether they were to be paid for in money, or in any other manner, is not stated. Even if this were the case of a written contract, signed by the parties themselves, the authorities are clear that parol evidence is admissible to prove any collateral, independent fact, about which the written agreement is silent, because such proof is perfectly consistent with, and does not in the least tend to contradict, vary or explain the written instrument." The manner of payment, whether the purchase money, to be paid, were to be paid in money, or in any other manner, is of the class of collateral facts, in regard to which the rules, admitting parol proof, when the writing is silent as to that manner, apply, and we are unable to distinguish between the case of *McCreary vs. McCreary* and this case, so far as concerns the present question. In this case, the paper, considering it, for this purpose, a written contract, specifies the sum to be paid, but about the manner of payment, is silent.

The same question, in principle, was decided by the Court in *Creamer vs. Stephenson,* 15 *Md.,* 211, when a bond had

been given to indemnify the obligee against the claim of a third party on a judgment on which an attachment had been issued and laid in the hands of the obligee, and against all costs and charges to which the obligee might be subjected in resisting said claim, and refund all sums of money he might be legally required to pay on account of such claim. In an action on the bond, it was held competent for the plaintiff, to prove by parol, that when the bond was delivered, the obligor agreed to have the attachment case defended by his own counsel, the bond being silent as to the *manner or means* to be employed in resisting the claim, and the Court, in its opinion, cited and relied on the case of *McCreary vs. McCreary* with the other cases referred to. Even conceding, then, the paper in this case to be effective as a written agreement between the parties, parol evidence is admissible to prove any collateral, independent fact about which the agreement is silent, or " as to the general intention of the parties, concerning which the instrument is not decisive," in the language of *Phillips' Ev.*, 497, quoted in *McCreary vs. McCreary.*

Whether, in this case, the paper in question evidenced the contract between the parties, or constituted only an offer by Paul, and the minds of the parties met in a contract on a proposal by Owings of specified terms and conditions, on which he was willing to accept Paul's offer; and on Paul's agreement to those terms and conditions, it is not material to determine. In either case, parol proof is admissible.

The testimony of Basil Owings must, we think, conclude the case. He proves that the agreement was, that the five thousand dollars were to be credited on the judgment of Owings against Paul. The appellants have offered no proof to sustain their averment, that Owings was to release his judgments against Paul, and to proceed no further on them, and was to pay Paul the clear sum of five thousand dollars; but have relied in argument, on the circumstances of the case as furnishing this inference.

The fact that Owings a few days after his purchase from Paul, sold the property for over eleven thousand dollars, was

urged by the counsel of the appellants in the argument, as tending to show that at the time of the contract, it was understood by both parties that the property was worth at least ten thousand dollars, and that the true intent of the parties was that five thousand dollars was to be paid by Owings for Paul's interest in addition to the amount of his judgments against Paul, and as maintaining their proposition that the terms in the written paper, "which is now bound by a judgment, held by Mr. Richard Owings, and under execution for the same," ought to be construed "subject to a judgment," &c. Conceding to this fact, much weight, if it stood by itself, in justifying the inference insisted on by the appellants, yet it would be but an inference to show the manner in which the purchase money was to be paid; that it was to be paid in money, and the judgments treated as satisfied, and not to be paid by means of the judgments or credited on them; and that inference ought not, we think, to outweigh the positive evidence of Basil Owings, that it was not to be paid in money, but was to be credited on the judgments. Paul's title, equitable and legal, covered the entire property. By the language of the paper, he agreed to sell the entire property, not "subject to a judgment held," &c., but which was "bound by a judgment held," &c., and the paper is silent as to the manner of payment. To this the parol proof is explicit.

The inferences which might be deducible from the facts and circumstances detailed in the record are numerous and conflicting, and we forbear further remark on them in view of the positive proof.

The testimony of Henry H. Owings may be omitted and the result reached is the same. We have not based our opinion on it and it is consequently unnecessary to decide on the exceptions to it. The exceptions to that of Basil Owings are overruled.

Whilst we think that the decree must be affirmed, yet there are circumstances which render it proper that costs shall not be allowed against the appellees. Mr. Owings might have

availed of his remedy before the appellants were subjected to the costs and expenses of their ejectment, and as a leading object of his bill, when finally filed, was to be relieved of the effect of a judgment recovered against him ; we think that he ought not to recover his costs in these cases from the appellees.

*Decree affirmed without costs.*

