LEWIS J. KIRK v. THE ATLANTA AND CHARLOTTE AIR-LINE RAILWAY COMPANY.

*Negligence—Fellow-Servants.*

1. Where an employé is injured by the negligence of a fellow-servant, the common master is not liable for the injury.

2. A foreman, who directs the work of the other servants, is as much a servant as those whose work he superintends, and if the common master has a general supervision of the work, he is not liable for the foreman's negligence, although the injured servant is obliged to obey the foreman's orders.

3. The term fellow-servant includes all who serve the same master, work under the same contracts, derive authority and compensation from the same source, and are engaged in the same general business, although it may be in different grades and departments of it.

4. A person cannot be heard to say, that work which he has voluntarily agreed to do, is not within the scope of his employment. When he agrees to act with other employés, he becomes their fellow-servant, so far as to introduce between them, the same rule of legal responsibility, and this rule applies to one who is voluntarily assisting the servants in their work.

5. So where it appeared that a yard-master had the general management of making up, switching and receiving trains ; *It was held*, that a car-repairer was his fellow-servant, and the company was not liable for an injury, resulting from his negligence.

(*Dobbin* v. *The Railroad*, 81 N. C., 446, cited and approved).

CIVIL ACTION, tried before *McKoy, Judge*, and a jury, at August Term, 1884, of the Superior Court of MECKLENBURG county.

There was a verdict and judgment for the plaintiff, and the defendant appealed.

The facts appear in the opinion.

*Mr. W. P. Bynum*, for the plaintiff.
*Messrs. R. D. Johnstou, D. Schenck* and *F. H. Busbea*, (*Messrs. H. C. Jones* and *C. M. Busbee*, were with them on the brief), for the defendant.

SMITH, C. J.  The complaint imputes negligence to the defendant company, in the management of a shifting engine, in charge

40

of an engineer, whereby it came in contact with a stationary car, and the impulse of which put others in motion, under which the plaintiff, then engaged in inspecting, by direction of the foreman of the round-house, was run over, and his arm crushed, so as to require amputation; and for this injury, demands compensatory damage. The answer denies the imputation of negligence, and avers contributory negligence on the part of the plaintiff, in producing the result. It also sets up the further defence, that if there was a want of due care in moving the engine, it was the act of a fellow-servant, in the same general employment, for the consequences of which, the company, the common principal of both, is not responsible.

The issues prepared and submitted to the jury were:

" (1). Whether the plaintiff's injury was caused by the defendant's negligence?

(2). Was the plaintiff's negligence contributary thereto; what damages is he entitled to?"

The Court refused an issue tendered for the defendant: " was the injury caused by the negligence of a servant of the company—if so, what one?" and the defendant excepted thereto.

The testimony offered, tended to show the following facts:

The plaintiff's general employment was that of a carpenter, and he had been often sent out, as he was on the occasion when he was hurt, to inspect cars, and report upon their condition and fitness for immediate use. To this service he made no exception that it was not within the scope of his employment. The yardmaster, B. T. Thompson, at the junction, had the general management, making up, switching, receiving and delivering trains. He had ordered Harris, the engineer in charge of the switch engine, to stop at the eating house, seven car lengths from the cars under inspection. It was the custom for the switch engine to remain, and not move until the inspection was finished, and the engineer informed of the fact. One Todd was the regular inspector, acting at the time, the plaintiff assisting in place of one Clark, who was sick. It was the duty of Todd to notify

the yard-master when the examination was over, and then for him to communicate the fact to the engineer, that he might proceed. One John Smith, a colored man, was an assistant of the yard-master, and when directed, would convey messages, and give signals to the engineer, when the yard-master was present, that the way was clear, and he could proceed. On this occasion, Smith gave the unauthorized and premature order, as it is termed, to the engineer Harris, who thereupon put his engine in motion, and caused the car under which the plaintiff was inspecting, to crush his arm, no notice having been given him of what was about to be done, and he not seeing or hearing of the approach of the engine, until the impact took place.

The blame then rests upon Smith, primarily for giving the order, and it is perhaps shared by Harris, in heeding and acting upon it, as coming from that source, and A. P. Brown the fireman.

It was admitted by the counsel for plaintiff, that Harris the engineer, Brown the fireman, Thompson the yard-master, and Smith, his assistant, were fellow servants of the plaintiff, and the Court directed the jury, that "if the injury resulted to the plaintiff, without fault on his own part, from the negligence of an employé or fellow servant, occupying the same level with the plaintiff Kirk, when the Air-Line Company used due care in the selection of such fellow servants, then the jury could not say from this, that the injury resulted from the carelessness or negligence of the Air-Line Company."

Then after defining a fellow-servant, as "one upon an equality with the injured person, under the same or common control, engaged in a common employment, or in the same line of employment," the charge proceeds to subjoin a qualification of the general rule of non-liability of the common master, in these words: "But if one of the employees has the right to give orders, and the other, by his employment is bound to obey the orders, then the person who has the right to give an order, which the other ought to obey, under the contract of employment which

he has taken upon himself, these are not fellow-servants, but the man who has the right to give the orders, is a *middle man*, and whether vice-principal or not, if Kirk was injured by the carelessness or negligence of one occupying this position, which gave him the right to order, and which order Kirk, by the nature of his employment, ought to obey (if he has shown his right to recover in other particulars), and he is without fault on his own part, he is entitled to your verdict for such damages as you think he has shown, and to which he is entitled."

The first observation suggested by the charge, is the omission of the Court to tell the jury, between which of the parties, and the plaintiff servant, the relations of middle-man and subordinate, which exempt the defendant from the protection of the general rule, and subject it to direct accountability for the injury sustained. Between the plaintiff, and those to whose immediate precedent action the injury is attributed, the relations are conceded to be those of fellow-servants, and in one view properly so conceded, and the charge, if it has any support in the evidence, must have reference to the yard-master, under whose general superintendence all the movements and operations at the station are placed. But it was not from any inattention or act of his, that the mischief proceeded. He gave no false information, nor did he issue any inprovident order on the occasion, so far as the testimony reveals his conduct, but the culpability abides upon Smith or Harris, or upon both, and these are co-employees, for whose conduct in the discharge of duty, their common superior is not answerable.

But is the charge correct, in stating the proposition of law, and is it appropriate to any aspect of the testimony? Is it true that when among fellow-workmen, one has authority to direct and control the work of others, as in all cases a general superintendence must be vested in some one, in order that the efforts of each may be in harmony, and tend to one practical result, where many are employed, this person becomes a *middle man* representing as an agent, their common principal, and impos-

ing on him a personal responsibility for the agent's individual misconduct, or want of proper care and caution, in conducting the business? If this were so, the subordination necessary among numerous workmen, engaged in the same general business, would practically neutralize the rule itself, for control and direction must rest in some of them, or confusion and conflict would ensue. It is not always easy to determine the dividing line, to be crossed, which takes an employé out of his class, and changes him into a middle-man, who represents the superior, and bears his relation to the other employees, so that his negligence becomes, in legal effect, the negligence of the superior towards the latter.

The true principle is thus stated by ASHE, J., delivering the opinion in *Dobbin* v. *Railroad,* 81 N. C., 446 :

" To impute the negligence of such an agent to the master, he must be more than a mere foreman to oversee a batch of hands, direct their work under the supervision of the master, see that they perform their duty, and in case of dereliction, report them. He must have entire management of the business, such as the right to employ hands and discharge them, and direct their labor, purchase material, &c. He must be an agent, clothed in this respect, with the authority of the master, to whom the laborers are put in subordination, and to whom they owe the duty of obedience. Such an agent is what is known as a " middle-man," who, as well as the laborer, is the servant of the master, and although he may work with the laborer in furthering the common business of the master, he is yet not a fellow-servant, in the sense of that term as used by the Courts, because he represents the master in his authority to direct, control, and manage the business."

This descriptive language is used by a recent author in defining this intermediate employé who assumes and exercises the functions of the employer: " When, however, the employer leaves everything in the hands of a middle-man, reserving to himself no discretion, then the middle-man's negligence is the employers negligence, for which the latter is liable." Whar. Neg., §229.

Appended to the section is a note, numbered 3, in which the recognized rule in England, and generally prevailing in this country, is declared to be, "that the term fellow-servant includes all who serve the same master—work under the same control—derive authority and compensation from the same source—and are engaged in the same general business, though it may be in different grades and departments of it."

The operation of the principle is not altered by the fact that the servant, chargable with negligence, is a *servant of superior authority, whose lawful directions the other is bound to obey.* In *Feltham* v. *England,* L. R. 2, Queen's Bench 33, decided in 1866, the defendant was a maker of locomotive engines, and had many hands in his employment, among whom was the plaintiff. In the course of the work, a travelling crane was used to hoist the engines, and convey them to tenders for their carriage. The crane moved on a tram-way, resting on beams of timber, and, supported by piers of brick work, which had been recently repaired, and partly rebuilt, and the brick work was fresh. In using the work, the piers gave way, and then the beams broke from the strain cast upon them. The accident occurred at the first using of the crane. There was no evidence of any defect in the crane, or negligence in the manner of using it, or that the engine was unreasonably heavy; nor was there of the defendant's personal privity or interference, but his manager or foreman was present, and directed the hoisting. The traveller was worked by three men at one end, and three at the other. When moving along, the crane oscillated, and the foreman, thinking it not worked properly, directed the men to stop, as they did for a brief moment, and then to move on again, and, just before, he had ordered the plaintiff to get on the engine and clean it. He did so, while it was in motion, and, while thus occupied, some mortar fell, the pier gave way, and the engine fell, breaking the plaintiff's arm. The Court said: "We think the foreman, or manager, was not, in the sense contended for, the representative of the master. The master still retained control of the estab-

lishment, and there was nothing to show that the manager or foreman was other than a fellow-servant of the plaintiff, although he was a servant having greater authority," quoting, with appro-val, what was said by WILLES, J., in *Gallagher* v. *Peper*, 33 L. J. C. P., 335, " A foreman is a servant as much as the other servants whose work he superintends."

In *The O. & A. R. R. Co.* v. *Murphy*, 53 Ill., 336, the facts were not unlike those in the case before us. The person, for causing whose death the company was sought to be held responsible in that case, was one of several workmen in its service, under the immediate charge of a foreman, whose duty consisted in examining trains on their arrival at the station, and making needed repairs. He and a fellow workman, had been engaged in "jacking up" and repairing a car in a freight train, and having finished, had started for the shop in which their tools were kept, when in passing down the rails of the main track, he was struck by a switch engine, with such violence as to cause his death soon afterwards. The engine was used on the station grounds, and although under the immediate control of the yard master, was used as well for other purposes, as for switching cars to be repaired. When a car needed repair, the foreman would advise the yard-master, and the latter would have the switch engine move the car to such place in the yard, as he thought proper, and the foreman would have the needed repairs made.

Upon these facts it was held, that the deceased and the engineer managing the engine, through whose negligence the injury was received, "*were fellow-servants in such a sense as to subject them to the operation of the well established rule, which refuses a remedy against a common master, in favor of one employe, who receives an injury, through the carelessness of another, while in the same line of duty.*"

The cases are so numerous and uniform, that we refer to but one other, where the doctrine is carried much further, perhaps too far for us to give it our approval. *Wander* v. *B. & O. R. R. Co.*, 32 Md., 410.

Nor do we give force to the argument that places the plaintiff's service in the duty of the inspector, outside of those which he assumed as a carpenter. He made no objection to the service, had a dozen times before, as he himself states, undertaken it as incident to his employment, and voluntarily. He therefore stands upon the same footing, as if this service was within the scope of his agreement. One who volunteers to act with other employees, becomes one himself, so far as to introduce between them, the same rule of legal responsibility.

Thus in *Skipp* v. *East Co. R. R. Co.*, 9 Exch., 223, where the force employed, was insufficient to perform the service of attaching carriages of the baggage trains to the locomotive engine, but the plaintiff undertook to assist in the work, and while so engaged, was injured, it was held, that as he had before, for several months, been employed in this particular service, and had not made any complaint on the subject, he had no redress on the company.

So it was held in *Degg* v. *The Midland R. R. Co.*; *Hurls' & Norm*, (Exch.) Reports, 773, that the rule of law, that the master is not responsible to the servant, for injury, occasioned by the negligence of another servant, in the course of their common employment, *" applies to the case of a person who is injured whilst voluntarily assisting the servants in their work."* Accepting this as a correct exposition of the law, we find it difficult, in the scant and unsatisfactory evidence before us, to fit the instruction to the proofs; and if not erroneous in itself, it was certainly calculated to mislead the jury, in determining the real and material issue involved in the controversy. We cannot perceive from the testimony, that Thompson, or any one else, is lifted from his position as a co-servant, to that of a representative of the company, in an agency which makes it responsible for his negligent omissions, or careless conduct, under the legal definition of a *"middleman;"* or, if there was evidence to warrant the finding of the fact, that it was to his negligence the accident was owing, so as to apply the rule to the plaintiff's case.

The immediate cause of the injury was the premature movement of the engine by Harris, and preceding and producing the movements, was the false direction given by Smith, upon one or both of whom, liability for the consequences rests, and between them and the plaintiff, the relation of fellow-servants is admitted to exist. It may be that, upon a fuller development, it will appear that the mishap is directly or indirectly owing to the want of attention and care on the part of some one, who may be proved to be a middle-man, but this was not shown, so as to render pertinent the instruction given in such general terms; nor was the instruction, that the right to give an order, resting in one employé, and the duty of obedience to it, imposed upon another, of itself, created the relation out of which springs the defendants accountability to the latter, for an injury suffered.

Without considering other exceptions, this fundamental error in the ruling, entitles the defendant to have another jury, who shall be properly advised as to the law, to pass upon the case.

The verdict must be set aside, and a *venire de novo* awarded, in order to which, let this be certified to the Court below.

Error.                                                                    Reversed.