BEVERLY SCOTT v. THE WILMINGTON AND WELDON RAIL-
ROAD COMPANY.

*Issues—Contributory Negligence—Judge's Charge—Assignment
of Error.*

1. In an action for damages for an injury caused by the negligence of the defendant, where the defence is contributory negligence, it is sometimes proper to submit two issues, one as to the negligence of the defendant, and the other as to the contributory negligence of the plaintiff, yet when the action of both has contributed to the injury, it is allowable to submit an issue only as to the defendant's negligence, with instructions to find that in the negative, if the jury believe that the plaintiff's conduct contributed to the injury.

SCOTT *v.* THE RAILROAD.

2. It is not *per se* negligence for the plaintiff to have driven his vehicle near one edge of a street approaching a railroad, although he could have obtained a better view of the track from the middle of the street.

3. It is not error for the trial Judge to refuse to charge that certain acts or omissions of the plaintiff amount to contributory negligence, when the evidence in regard to them is conflicting.

4. Where the plaintiff was injured at a point where the railroad track crossed the street, it is not *per se* negligence that he might have seen the moving cars at another crossing, where there were several tracks, and the evidence was conflicting as to whether he could have discovered that the cars were on the track which led to the crossing which he was approaching.

5. Error cannot be assigned in this Court that the trial Judge gave the instructions asked by the appellee to the jury, when no exception thereto is made in the record.

(*Kirk* v. *The Railroad*, 94 N. C., 625; *Cedar Falls Co.* v. *Wallace*, 83 N. C., 225; cited and approved).

CIVIL ACTION, tried before *Connor, Judge,* and a jury, at January Term, 1886, of NEW HANOVER Superior Court.

The action was brought to recover damages for an injury to the plaintiff, alleged to have been caused by the negligence of the defendant.

The following diagram will be of assistance in elucidating the matter:

Distance from west rail of track to fence on West 35 ft.
"    C to edge of plank road    "   15½ "
"    D "   "    "     "   21 "
"    A "   "    "     "   22 "
"    A to C,      82 "
"    A to where track crosses Nutt st, 627 "
"    A to same point following track, 675 "
Average length of freight car,   35 "

NOTE:
C—Where struck.
D—Where dragged.
A B—Longest length that can be seen from R. R. on Nutt St. down track.
Width of track 5 ft.
Distance between fences at A, 47 ft.

The defendant's train of cars, while backing up on the track on Nutt street, in the city of Wilmington, came in contact with the horse and dray driven by the plaintiff, then in the act of crossing, whereby both his property and him-

self sustained serious injury, the redress for which is sought in this action. The testimony was somewhat conflicting as to the circumstances, the management of the train, and the conduct of the plaintiff, when the collision occurred, and the degree of blame resting upon the parties respectively, in causing it. The defendant's track, as shown by the accompanying diagram, carefully prepared, and giving location of objects and accurate measurements of distances, crosses Nutt street some six hundred feet distant from the point C, the place of the accident, passes from the street in a curve on the adjoining land, and again emerges into and proceeds along the street. Its course is marked by a broken line, and intersects the worn pathway designated by pencil line, which was used by draymen, and others with vehicles, to avoid passing over the railroad at an oblique angle, and exposing them to danger from the wrench thus caused. From the point A, the train would be seen on all of the curve. except that part of the curve cut off by the broken dark line A B, prolonged, a distance of one hundred and fifty feet, and as the train was two hundred and eighty feet long, a considerable part of it would still be visible to the observer. The plaintiff, however, had driven his horse towards the east side of the street, so that his view was obstructed by the warehouse. and when he moved on towards the crossing place at K, the rear and foremost car in the train was so near that, as he testifies, he was unable to extricate himself from his perilous position and avoid the mishap.

It was admitted that as soon as the signal was given, the engineer did all he could to stop the train, but without avail. There was much testimony as to whether the bell was ringing as the train moved, or the whistle blown to warn persons of the presence of danger, and whether there was any lookout on the train, and it seems to have been conceded that there was none at the time on the foremost car of the back-

ing train    The testimony was conflicting as to the speed
with which the train was going, and not in harmony in
other particulars, but the foregoing brief narrative may suf-
fice to enable one to understand the action of the Court in
the premises.    The defendant denied any negligence in its
own officers and servants, but relied mainly on the want of
care and reasonable diligence in the plaintiff, by the exer-
cise of which, it is alleged, the collision might have been
avoided.

Two issues only were allowed to go to the jury, and these
with the responses thereto, are as follows:

1. Was the plaintiff injured by the negligence of the de-
fendant?    Answer—Yes.

2. What damages did the plaintiff sustain?    Answer—
Fifteen hundred dollars

The defendant desiring to separate the negligence which
it imputed to the plaintiff, from that charged upon the de-
fendant in causing the result, proposed to submit a third
issue, inquiring into the negligence of the plaintiff, as con-
tributory to the injury sustained, and this was refused, for
the reason, as stated by the Court, that it was involved in
the first issue.    Special instructions were asked for the de-
fendant, all of which (except the 13th refused and the 14th
modified,) were given.    They were as follows:

"1. That the defendant was not bound to station a flag-
man at the crossing, and the failure to do so was not negli-
gence.

"2. That the defendant was bound to no higher degree
of care than the plaintiff was, and was bound to use only
ordinary care.

"3. That if the engineer in charge of the train saw the
plaintiff, or his dray, on the track, he was not bound to stop
the train, but had a right to presume that he would get out
of the way in time to escape the danger.

"·4. That the defendant had a right to run its train backwards, if the exigence of its business required it; and it was not negligence to do so.

"5. That if the train was running in the day-time, at a low rate of speed, say five or six miles an hour, with a lookout on top of the cars, and the usual signals were given by ringing the bell and blowing the whistle, then the defendant was not guilty of any negligence; and the plaintiff cannot recover.

"6. That if the engineer in charge of the train neglected to ring the bell or blow the whistle, or omitted any other proper precaution, such neglect or omission did not relieve the plaintiff from the duty of making use of his senses of sight and hearing, and taking reasonable care for his own safety.

"7. That it was the duty of the plaintiff, on approaching the railroad crossing, to be on the alert, to look along the line of the road, to listen, and to use every reasonable means to discover whether a train was approaching, and if he failed to do so, he was guilty of neglect, and cannot recover, if that negligence contributed to bring about his injury.

· ' 8. That if the plaintiff could have ·seen the train if he had looked, or have heard the whistle or bell, if he had listened, in time to get out of the way, he was guilty of negligence, and cannot recover.

"9. That the rule that where a person suddenly finding himself in a position of danger, loses his presence of mind and acts imprudently, he is not to be held responsible for it, does not apply to cases where the person has got into a position of danger by his own fault or negligence. And if the plaintiff could have seen the cars if he had looked, or heard the signals if he had listened, and was on the track with his dray, and, finding the cars approaching, in endeavoring to get his dray off the track pulled the wrong rein, whereby he prevented his horse from leaving the track in time to

escape the danger, he was guilty of negligence and cannot recover.

"10. That if the plaintiff was prevented from getting his horse and dray off the track by the fractiousness, stubbornness, or other fault of the horse, that will be imputed to him for negligence, and he cannot recover.

"11. If the plaintiff, after becoming aware of the approaching train, could have saved himself and his son from injury by the exercise of ordinary care, but continued in a dangerous position for the purpose of saving his horse and dray, and was injured in consequence thereof, he cannot recover.

"12. That if the plaintiff, by driving in the middle of the street, could have seen the train in time to get out of the way, but drove his dray so near to Morton's fence and warehouse, that he was prevented by them from seeing it in time to escape, then he is guilty of negligence and cannot recover.

"13. That if the plaintiff could have seen the cars when they passed at the first crossing, if he had looked, he was guilty of contributory negligence, and cannot recover.

"14. It is not sufficient for a plaintiff to show negligence; he must also show that the injury was the proximate result of that negligence. And if the defendant had no lookout on the cars, or if there was a lookout and he did not look, still if the plaintiff's position was such that he could not have been seen from the top of the cars, the plaintiff cannot recover for that act of negligence."

In beginning his charge, his Honor explained to the jury, that the first issue submitted to them involved the question of both the defendant's and the plaintiff's negligence, and if they found that the plaintiff was guilty of contributory negligence, then he could not recover.

His Honor then charged the jury as follows: "If the plaintiff went upon the defendant's track, and suffered in-

jury, he would be deemed negligent in so exposing himself to danger, if by ordinary care and attention he could either have seen or heard the approaching train at the time of entering upon the track, and in time to have made his escape. Hence, if you find from the testimony, that at the time of entering upon the track, the position of the plaintiff was such, that by the use of ordinary care, he could have seen the approaching train, or if you believe from all of the testimony that the bell was being sounded and the usual alarm whistle had been blown, and that by the use of ordinary care the plaintiff could have heard them or either of them at the time of entering upon defendant's road, he would be guilty of contributory negligence, and would not be entitled to recover. If at the time of entering upon the track, the plaintiff was in the street, and the curve in defendant's road, or any obstruction at the point of such entrance, prevented him from seeing such train of cars' in time, and at a sufficient distance to avoid injury, and the defendant's train was being run without giving signal, either by blowing the whistle, ringing the bell, or some other mode sufficient for that purpose, the defendant would be guilty of negligence, and the plaintiff entitled to recover, unless by some act on his part, he contributed to the injury. Or, in other words, it would be negligent in the defendant to run its train in a public street in a city, around a curve, or where there were such obstructions as prevented a person, by the use of ordinary care, entering upon the road at a public crossing, from seeing the cars in time to avoid danger, without giving proper warning."

His Honor then gave the jury the special instructions asked for by the defendant, except those numbered 12 and 13, which he refused; but *in lieu* of No. 13, he gave the following, to-wit: " That if the plaintiff could have seen the cars when they passed the first crossing, and discovered that they were on the track, if he had looked, he was guilty of

contributory negligence, and cannot recover." Defendant excepted.

At the request of the plaintiff, his Honor gave the following instructions:

1. "If the jury believe from the evidence, that the place of the accident was a noisy part of the city, where the ringing of bells and blowing of whistles were frequently occurring, so much so that they were not calculated to put persons on their guard, the blowing of the whistle and ringing the bell would not be sufficient to give warning; but that the same facts which would increase defendant's liability to give greater warning, would increase the duty of plaintiff in the care which he should exercise. That they were bound in the same degree of care.

2. "That although plaintiff may have known of the curve, and the running of trains over this track, he was not negligent if he followed the regular beaten track of drays and other vehicles, although this track carried him so near the fence or building as to partly cut off the view of the track; provided, before doing so he used reasonable and ordinary care to ascertain whether a train was approaching."

In conclusion, his Honor said to the jury:

"Was the damage occasioned entirely by the negligence of the defendant, or did the plaintiff himself so far contribute to the misfortune by his own negligence or want of ordinary and common care and caution, that but for such negligence and want of common care and caution on his part, the misfortune would not have happened? If you believe the first branch of the proposition to be the truth, then you will answer the issue in the affirmative. If you believe the last to be true, you will answer the issue in the negative. The general rule is, that the burden of proof rests with the plaintiff, or the party making the allegation. As here, the plaintiff alleges that he was injured by the negligence of the defendant's agents, it is his duty to satisfy

you by a preponderance of the testimony that this is true. If from the plaintiff's proof, it appears to you that the injury was caused by the defendant's negligence, and the defendant seeks to repel this by averring contributory negligence on the part of the plaintiff, the burden of proof shifts, and it must, by testimony of the same probative force, ˙establish the averment. If, however, the plaintiff upon his own proof, shows that according to the rules of law laid down by the Court, he contributed to the injury, the burden is not on the defendant, but it may rely upon the failure of the plaintiff to make out his case, and need not introduce testimony. I charge you that the plaintiff cannot recover, if by his own negligence he contributed to the injury."

There was a judgment for the plaintiff, and the defendant appealed.

*Messrs. D. L. Russell, Ricaud* and *J. D. Bellamy,* for the plaintiff.

*Messrs. Geo. Davis* and *C. M. Stedman,* for the defendant.

SMITH, C. J., (after stating the facts). There are but three errors sufficiently assigned in the record requiring the exercise of our appellate jurisdiction, and these are the refusals to submit the proposed issue as to the defendant corporation's agency in bringing about the disaster to the person, horse, and dray of the plaintiff; and to give the 12th instruction, as also to the modification in that next numbered.

I. The issue proposed and refused:

It is true, the inquiries into the defendant's negligence, and that imputed to the plaintiff, contributing to the result, might have been presented to the jury in separate issues, as was done in *Kirk* v. *Railroad,* 94 N. C., 625, inasmuch as the liability for the consequence depends on the presence of the one and the absence of the other on the occasion of the mishap. Yet when the action of both has contributed to the bringing about

of the injury, it is sometimes not easy to run the dividing line between the co-operating agencies, and say where the essential culpability rests. The Judge deemed the association so close as to involve both inquiries, and that the same end would be reached, and the minds of the jury less distracted from the merits of the controversy, by having a single issue, under directions to render a negative response, if upon the evidence, it appeared, that the injury would not have been suffered, had the plaintiff exercised proper care and vigilance in avoidance. So he charged the jury, and we must suppose his instruction was understood and acted upon. If so, the defendant has had every advantage which a second issue, if allowed, would have given him, and no prejudice has come in consequence of the refusal. *Cedar Falls* v. *Wallace*, 83 N. C., 225.

II. The denied instruction :

We can see no error in this ruling. There is no negligence in the single act of passing from the middle of the street where the approaching train could have been seen, to a place where a partial obstruction to the view was met. It was in moving thence towards the track, without a sharper lookout and greater carefulness, to which negligence can be attributed, and this is covered by other parts of the charge.

III. The modified instruction :

The instruction in the form asked, was entirely inadmissible, for seeing the cars at the first crossing, would not make the plaintiff "guilty of contributory negligence" and defeat his recovery, while it should have imposed greater caution on him, driving onward afterwards. Yet even this was given, with the addition, that this would be so, if when he saw the cars, he discovered that they were on the track that brought them towards him, and the ability to thus distinguish, depended on conflicting testimony, bearing upon the series of instructions favorably responded to We can see no just grounds of complaint afforded the appellant.

The instructions given at the instance of the plaintiff are not excepted to, nor is the ruling assigned as error. Nor if it had been, would we be prepared to sustain the exception thereto.

We cannot disturb the verdict, for the responsibility of rendering it, when there is any reasonable, that is any, evidence to warrant the finding, rests upon the jury.

There appears no error in the record, and the judgment must be affirmed.

No error.                                                  Affirmed.