JOHN PETERSON vs. THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

First Judicial District, Hartford, October Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

The rule is well settled in this State that a master who uses reasonable care to perform all the duties to his servants which the law imposes upon him, is not liable to one of them for an injury caused by the negligence of a fellow-servant, while both are engaged in the master's work.

Where all the facts are found, the questions whether the employees are fellow-servants or not, and whether the particular duty involved is one which rests upon the master personally or is one that may be delegated to and discharged by a servant, are reviewable by this court upon appeal.

A railroad company which provides a proper transfer table for its cars, enforces adequate rules for its operation, and selects sufficient and competent servants therefor, is not liable for the neglect of a sub-foreman in charge of such table, while moving a car upon it, to warn an employee engaged in loading the car. Not only are such employees fellow-servants, but the duty of seeing that the track is clear before moving the car is one resting upon the servant in charge rather than upon the master.

Argued October 11th—decided December 16th, 1904.

ACTION to recover damages for personal injuries alleged to have been caused by the negligence of the defendant,

brought to and heard in damages by the Superior Court in
Hartford County, *George W. Wheeler, J.;* facts found and
judgment rendered for the plaintiff for $2,500, and appeal
by the defendant. *Error; judgment to be rendered for nominal damages only.*

. *Lucius F. Robinson,* with whom was *Ralph O. Wells,* for
the appellant (defendant).

*William J. McConville,* for the appellee (plaintiff).

TORRANCE, C. J.   The plaintiff, a workman in the service
of the defendant, was engaged in loading a car, when other
workmen of the defendant negligently caused the car to run
against him, knocking him down and inflicting the injuries
of which he complains.   Two of the questions upon this
appeal are whether the plaintiff was a fellow-servant of the
men whose negligence caused the injury, within the meaning
of. the fellow-servant rule ; and whether the negligence of
the other workmen was the negligence of the defendant.

The facts found bearing upon these questions are in substance the following :   At the time of the injury the plaintiff
was at work at the north end of an ash car which stood upon
the transfer or turntable.   From this table the car could be
moved north or south by means of the stationary engine on
the table.   This engine and table were operated by Grimes,
an employee of the defendant.   In running the ash car off
the table it was customary to attach a cable to the car, and,
as the car moved, to follow and detach the cable ; and in this
work Grimes required assistance.   Just before the injury to
the plaintiff, Grimes told his assistant, Maloney, a workman
of the defendant, to attach a cable to the north end of the
car for the purpose of moving it south.   Grimes and Maloney
saw the plaintiff at work and told him they were about to
move the car, but. did not tell him in which direction it was
to be moved.   The plaintiff was an ignorant man, and he
understood from the warning that the car was to be moved
to the north.   He then went to work at the south end of the

car.   Neither Grimes nor Maloney knew of this, and Grimes supposed that the plaintiff had gone to the roundhouse. After telling the plaintiff that the car was to be moved, Grimes went to the engine-house on the table, and in about six minutes got up steam and started his engine, and moved the car some seven or eight feet to the south, thereby causing the injury to the plaintiff.   Grimes and Maloney were reasonably fit and competent workmen, and the engine and car could be readily operated by them with reasonable safety. The transfer table and its appurtenances were reasonably safe appliances when operated with proper warnings.

From his position when he started the engine, if he had looked, Grimes could have seen the plaintiff at the south end of the car, and " could have known of the peril of the plaintiff should the car be moved south. . . . It was the duty of Grimes, under his instructions, . . . to be careful in moving the car off the table to see that everything was all right, and to have seen that no obstructions were on the track ahead of the car, and ordinary care required him to take such precautions."   Grimes took no such precautions, and " his failure to do so was a breach of his instructions and a failure to use ordinary precautions to avoid accident."   It was the duty of Maloney " to have seen that the track was clear.   This he did not do, and did not know it was his duty to do."   The plaintiff's duties were to remove ashes, cinders and waste material from the engine-house, and to clean up the office of the master-mechanic.   It was his daily custom to carry said ashes and other material in a wheelbarrow to a car used for removing ashes.   The plaintiff was under the general control of the defendant's master-mechanic, and under the immediate direction of the general foreman of the repair shops and yard.   Grimes was a subforeman under the defendant's master-mechanic, and the general foreman of the repair shops and yard.   His duties consisted mainly in operating the transfer table.   " The plaintiff was not subject to Grimes' control or orders, nor associated with him in any of his work. . . . The defendant, through its master-mechanic and the foreman of the repair shops, had given Grimes proper

and sufficient instructions as to the management of the engine and the moving of the cars on and off the transfer table."

The court below has found that if Grimes, when he started the car, had "looked casually he ought to have seen the plaintiff, and had he looked carefully he could not fail to have seen him"; and further, that "his failure to see was a breach of his instructions, and was a failure to use ordinary precautions to avoid accident, and that failure is negligence and the injury to this plaintiff flowed from it."

Upon the facts thus found the trial court held, (1) that the plaintiff and Grimes and Maloney were not at the time of the accident fellow-servants within the meaning of the fellow-servant rule ; and (2) that the duty to warn the plaintiff that the car was to be moved south, and to see that the track was clear before it started, was a duty resting upon the master, and that the failure to perform that duty was the negligence of the master.

These rulings are reviewable in this court. *Nolan* v. *New York, N. H. & H. R. Co.*, 70 Conn. 159. They are assigned for error, and will be considered in the order above stated. When a master uses reasonable care to perform all the duties toward his servants which the law imposes upon him, he is not liable to one of them for an injury received in consequence of the negligence of a fellow-servant, while both are engaged in the master's work. This is the settled rule in this State, as recognized in numerous cases extending from that of *Burke* v. *Norwich & W. R. Co.*, 34 Conn. 474, down to that of *Whittlesey* v. *New York, N. H. & H. R. Co.*, 77 id. 100. This rule at times undoubtedly operates harshly, and for that reason it has from time to time been severely criticised ; but in all such criticism it is well to remember that where the master is personally free from blame, the rule of *respondeat superior*, to which the rule in question forms an exception, is itself a rule that is "technical, harsh, and without any basis of inherent justice." LOOMIS, J., in *Griswold* v. *New York & N. E. R. Co.*, 53 Conn. 371, 389. So long, however, as the rule remains a part of the law it is the duty of courts to enforce it. The rule itself is plain

enough, and its application in a given case is easy enough, after the question who are or are not fellow-servants has been answered ; but it furnishes no answer to the difficult question, in what circumstances are workmen of the same master to be regarded as fellow-servants within the meaning of the rule? Upon that question the decisions are in conflict, and no general rule for determining it, applicable in every State, has yet been laid down. In the present case we are not called upon to lay down any general rule concerning this matter ; we have only to determine whether, under our own decisions and others in accord with them, upon the facts found in this case, the plaintiff and Grimes and Maloney were fellow-servants within the meaning of the fellow-servant rule. At the time of the injury they were all employed and paid by the same master, were under the same superintendents and foremen, were at work together at the same time and place, in furtherance of the same common purpose, namely, the filling and removal of the ash car. Clearly they were in fact fellow-workmen, and upon principle and the great weight of authority we think they were in law fellow-servants within the meaning of the fellow-servant rule, even though the work of each and the grade of each may have differed from that of the other.

The following are a few of the cases in our State and elsewhere, in which facts like those in the case at bar were expressly, or in effect, held to constitute the relation of fellow-servant between the workmen of a common master. *Nolan* v. *New York, N. H. & H. R. Co.*, 70 Conn. 159 ; *McQueeney* v. *Norcross*, 75 id. 381 ; *Whittlesey* v. *New York, N. H. & H. R. Co.*, 77 id. 100 ; *Slater* v. *Jewett*, 85 N.Y. 61 ; *St. Louis Southwestern Ry. Co.* v. *Henson*, 61 Ark. 302 ; *Clifford* v. *Old Colony R. Co.*, 141 Mass. 564 ; *Lehigh Valley Coal Co.* v. *Jones*, 86 Pa. St. 432 ; *New England R. Co.* v. *Conroy*, 175 U. S. 323. See also the cases in a note to the case of *Sofield* v. *Guggenheim Smelting Co.*, 50 L. R. A. 417 (64 N. J. L. 605).

Assuming, for the moment, that the duty violated in the case at bar was not a duty of the master, we think the court

erred in holding that the plaintiff was not a fellow-servant of Grimes and Maloney.

The next question is, was the master bound to perform the duty toward the plaintiff which his fellow-servants neglected to perform. If it was, then the negligence of the servant was that of the master. *McElligott* v. *Randolph,* 61 Conn. 157. We think, however, that the duty in question here was not that of the master. The defendant had furnished for its workmen reasonably safe machinery and appliances; and fit and competent fellow-workmen in sufficient number; and a reasonably safe place in which to work, provided reasonable care was taken to see that the track was clear before moving the car. The defendant had also furnished Grimes with reasonably fit rules and instructions for his guidance in operating the table, which, if obeyed by him, made its operation reasonably safe for all concerned; and so far as appears these instructions and rules were generally obeyed and enforced. Having done all this was it also the duty of the defendant to see that the table was safely operated? We think not. Whether, in a given case, the duty neglected is that of the master, or that of a fellow-servant, is quite often a troublesome question. The line of demarcation between the negligent acts of a fellow-servant for which the master remains liable, and those for which he does not, is sometimes quite vague and shadowy, and it is not surprising that the decisions upon the subject are conflicting. That line has been defined or described in this way: It is " the line that separates the work of construction, preparation, and preservation from the work of operation. Is the act in question work required to construct, to prepare, to place in a safe location, or to keep in repair the machinery furnished by the employer? If so, it is his personal duty to exercise ordinary care to perform it. Is the act in question required to properly and safely operate the machinery furnished, or to prevent the safe place in which it was furnished from becoming dangerous through its negligent operation? If so, it is the duty of the servants to perform that act, and they, and not the master, assume

the risk of negligence in its performance." *St. Louis, I. M. & S. Ry. Co.* v. *Needham*, 63 Fed. Rep. 107, 25 L. R. A. 833, and note. Upon principle and authority we think the negligent act, in the case at bar, which resulted in the injury to the plaintiff, was one for which the master was not liable. The following are a few of the many cases in our own and other States which support this conclusion. *Nolan* v. *New York, N. H. & H. R. Co.*, 70 Conn. 159; *Kelly* v. *New Haven Steamboat Co.*, 74 id. 343, 347; *McQueeney* v. *Norcross*, 75 id. 381, 387; *Leonard* v. *Mallory*, ibid. 433, 434; *Whittlesey* v. *New York, N. H. & H. R. Co.*, 77 id. 100, 103; *Lundquist* v. *Duluth Street Ry. Co.*, 65 Minn. 387, 389; *Portance* v. *Lehigh Valley Coal Co.*, 101 Wis. 574; *Sofield* v. *Guggenheim Smelting Co.*, 64 N. J. L. 605 (50 L. R. A. 417, and note); *Slater* v. *Jewett*, 85 N. Y. 61; *Railway Co.* v. *Henderson*, 37 Ohio St. 549; *Evansville & T. H. R. Co.* v. *Tohill*, 143 Ind. 49; *Rutledge* v. *Missouri Pacific Ry. Co.*, 123 Mo. 121; *New England R. Co.* v. *Conroy*, 175 U. S. 323, and cases therein cited and commented upon.

In this view of the case the trial court erred in holding the master liable to the plaintiff for the negligent acts which caused the plaintiff's injuries; and for this reason, without noticing any of the other errors assigned, the judgment must be set aside.

There is error, the judgment is set aside, and the cause remanded for an assessment of and judgment for nominal damages.

In this opinion the other judges concurred, except HAMERSLEY, J., who dissented.