## APPENDIX.*

### COOK v. MANUFACTURING COMPANY et al.

(Filed 22 February, 1922.)

1. **Employer and Employee—Master and Servant—Rules—Dangerous Instrumentalities.**

   There was sufficient evidence in this case to show that a rule of defendant company required its employees operating a smaller of one of two engines at its plant to give warning to the plaintiff while at work in a dangerous position, under circumstances frequently recurring, and not dangerous when the machinery was idle, that they were about to start the engine.

2. **Same—Nondelegable Duties—Fellow-servants—Safe Place to Work.**

   *Held,* there was evidence in this case that the omission of the defendant's employees to warn the plaintiff that they were about to start the engine to operate the machinery was the proximate cause of the injury in suit, and that to give such warning was a nondelegable duty of the defendant, rendering untenable the defense that the negligence was that of the plaintiff's fellow-servants alone, and not attributable to the master, under the facts and circumstances of this case.

Petition by defendants to rehear this case, reported in 182 N. C., 205.

*J. O. Carr, George Rountree, and H. L. Stevens for petitioners.*

Stacy, J. This was an action brought by the plaintiff, an employee of the defendants, or one of them, to recover damages for an alleged

---

*Conclusions of Mr. Justice Stacy upon denying a petition to rehear this case reported in 182 N. C., 205.

negligent injury. The defense is that of contributory negligence and the "fellow-servant rule." There is no other plea of assumption of risk. *Dorsett v. Mfg. Co.,* 131 N. C., 261.

Upon trial in the Superior Court, there was a judgment as of nonsuit, at the close of plaintiff's evidence, which was entered on the theory that the only negligence shown was that of a fellow-servant, involving no liability of the master. Plaintiff appealed. A new trial was awarded and the judgment of nonsuit reversed on the ground that some evidence had been offered tending to show a dereliction of duty on the part of one or both of the defendants. We are now asked to grant a rehearing of the case, to the end that our former decision may be reconsidered, if not overruled.

The alpha and omega of every case must be determined by the facts. What are they here?

1. The defendants (or at least the Camp Manufacturing Company) own and operate a large sawmill and lumber manufacturing plant near the town of Wallace, N. C. Eight high-powered boilers, with the same number of furnaces, are run and used in connection with said establishment. To a considerable extent sawdust is used as fuel in feeding these furnaces, and the same is conveyed from the sawdust pile, or dust house, by means of a dust-chain or conveyor, which is operated by a small engine; and this engine is stationed in an out-house or one somewhat apart from the main buildings of the plant.

2. Plaintiff was employed as chief engineer of the mill, and had been working as such for about six months. It was his duty to inspect, examine, keep in repair, and care for the machinery, including all chains, pulleys, and engine equipment. To use his own language: "I was what you might call general repair man, but I did not operate or run the machinery. I had authority to stop the engines when I wanted to make repairs."

3. The dust-chain required attention, and sometimes repairs, on an average of two or three times a day, because of knots, slabs, etc., clogging and interfering with its operation. In working on this chain it was necessary to stop the engine, by which it was run, and the machinery to which it was attached.

4. Henry Peterson was fireman and looked after the large boilers. John Southerland (colored) was his helper and dust-cutter. The latter generally operated this small engine which ran the dust-chain.

5. It was also alleged that the defendants "failed to furnish the plaintiff with sufficient helpers; and negligently and carelessly failed to have said engine properly manned and properly operated with skillful and competent fireman and helper," etc. (*Pigford v. R. R.,* 160 N. C., 93.)

6. In starting and stopping the machinery in the sawmill proper, the defendants employed a system of whistle signals in giving notice or warning to the employees of such operation of the machinery; but there was no such system used in connection with starting and stopping the small engine which ran the dust-chain.

7. On 13 July, 1918, the plaintiff, discovering that something was wrong with the dust-chain, stopped the small engine and told Peterson and Southerland (speaking to both in person) not to start it again until he came out and notified them. Plaintiff then went to the rear of the dust house, and, upon investigation, found that a lightwood knot had lodged in the dust-chain. While undertaking to remove this "kink," as he called it, John Southerland, without warning and at the direction of Henry Peterson, started the small engine and the plaintiff was caught in the chain or conveyor and seriously and permanently injured. Southerland left the small engine, after the plaintiff had notified him not to start it again until he came out, and was away for about 25 minutes. Upon his return, Peterson told him to start up the engine and cut some dust. Southerland asked if the plaintiff had gone, and Peterson replied, "Yes, he has gone out." Neither was in a position to see the plaintiff at this time, as there was a partition between the dust house and the engine room.

8. There was evidence tending to show an established custom or rule that when the plaintiff had stopped an engine for the purpose of repairing any part of the machinery, it should not be started again until he gave the proper notice. Plaintiff testified: "When I stopped an engine the rule was that it was not to be started until I told them. This particular engine was stopped running maybe two or three times a day, some knots or things would get in there, and I would stop the engine and go and notify the men that I had stopped it; that was understood between me and the fireman."

Defendants earnestly contend that this was only an understanding between the plaintiff and the fireman and not a rule of the company. But it is alleged in the answer, as a matter of defense, that the plaintiff "knew when he went to work on the chain it was his business to notify all the other employees not to start the engine, and that on this occasion he failed and neglected to notify Southerland, or any other employee, that he was working on the chain and not to start up the engine, and his failure so to do was negligence, which proximately contributed to his injury." Why this allegation, if such duty were not imposed by a rule of the company? Obviously, the defendants must have realized that the plaintiff's position was one of peril and danger, or else this plea of contributory negligence would not have been made. At any rate,

there was evidence from which the jury might have found that such was an established rule of the company. And if it were the "business" of the plaintiff to give such notice—which seems to have been given—does it not follow that the defendants owed a corresponding duty to the plaintiff to see that the notice was obeyed? "It is the duty of the master to use reasonable care to see that the rules adopted by him for the safety of his servants are complied with; and, if he fail to do so, he will be responsible for injuries resulting from noncompliance therewith." 26 Cyc., 1159.

The defendants reply to this last question, however, by saying that even if Southerland and Peterson were negligent in starting the engine, such was only the negligence of one or more fellow-servants, and for which the defendants cannot be held liable under the doctrine announced in *Kirk v. R. R.,* 94 N. C., 625. Possibly it would be well to observe that in the *Kirk case* "it was admitted by counsel for plaintiff that Harris, the engineer, Brown, the fireman, Thompson, the yardmaster, and Smith (the negligent employee), his assistant, were fellow-servants of the plaintiff." Furthermore, the negligence of Smith was the only evidence of negligence before the court. But in the case at bar it is not admitted that Peterson and Southerland were fellow-servants of the plaintiff, with respect to the enforcement and observance of the rule which had been adopted expressly for the plaintiff's safety and protection. We are not now concerned with what their status or relation may have been in regard to other matters. Plaintiff contends that Southerland was the *alter ego,* or vice principal, of the master in caring for his safety while in a position of peril, especially as no system of signals had been adopted for the starting and stopping of this small engine. Plaintiff says that a reliance upon this rule was his only means of protection, that such was known to the defendants, and that it proved to be unsafe through no fault of his. Herein lies one of his allegations of negligence, and there are others.

The rigorous rule of the fellow-servant doctrine, as it once obtained, has been greatly modified in recent years. Speaking to this question, *Brown, J.,* in *Tanner v. Lumber Co.,* 140 N. C., 475, makes the following pertinent observation: "The true rule now is more humane and holds the master is liable for negligence in respect to such acts and duties as he is required, or assumed to perform, without regard to the rank or title of the agent intrusted with their performance. As to such acts, the agent occupies the place of the master, and he is liable for the manner in which they are performed. *Flake v. R. R.,* 53 N. Y., 549; *Crispin v. Bobbitt,* 81 N. Y., 521. If the negligent act of one servant

is done in the discharge of some positive duty which the master owed to another servant, then negligence in the act upon the part of the servant is the negligence of the master.

"This principle of the law of master and servant is laid down in many adjudications. *R. R. v. Baugh,* 149 U. S., 368; *R. R. v. Seeley,* 54 Kan., 21; *Minneapolis v. Lunden,* 7 C. C. A., 344; *Coal & Coke Co. v. Peterson,* 136 Ind., 398; *Justice v. Pa. Co.,* 130 Ind., 321; *Hough v. R. R.,* 100 U. S., 215. The Supreme Court of Pennsylvania thus expresses it: 'Whenever it is sought to hold the master liable for the act or neglect of his foreman, the question to be first considered is whether the negligence complained of relates to anything which it was the duty of the master to do. If it does, then the master is liable, for he must see, at his peril, that his obligations to the workmen are properly discharged.' *Ross v. Walker,* 139 Pa., 42; *Gunter v. Granville Mfg. Co.,* 18 S. C., 270."

In *Nor. Pac. R. Co. v. Peterson,* 162 U. S., 346, *Mr. Justice Peckham* gives the following full, clear, and accurate statement of the law: "The general rule is that those entering into the service of a common master become thereby engaged in a common service and are fellow-servants, and *prima facie* the common master is not liable for the negligence of one of his servants which has resulted in an injury to a fellow-servant. There are, however, some duties which a master owes, as such, to a servant entering his employment. He owes the duty to provide such servant with a reasonably safe place to work, having reference to the character of the employment in which the servant is engaged. He also owes the duty of providing reasonably safe tools, appliances, and machinery for the accomplishment of the work necessary to be done. He must exercise proper diligence in the employment of reasonably safe and competent men to perform their respective duties, and it has been held in many states that the master owes the further duty of adopting and promulgating safe and proper rules for the conduct of his business, including the government of the machinery and the running of trains on a railroad track. If the master be neglectful in any of these matters, it is the neglect of a duty which he personally owes to his employee, and if the employee suffer damage on account thereof, the master is liable. If, instead of personally performing these obligations, the master engages another to do them for him, he is liable for the neglect of that other, which, in such case, is not the neglect of a fellow-servant, no matter what his position as to other matters, but is the neglect of the master to do those things which it is the duty of the master to perform as such."

Where the master orders the servant into a situation which may become dangerous by the starting of machinery, or the acts of other servants, it becomes the duty of the master to use reasonable means to guard against such contingencies. *Cristanelli v. Mining Co.* (Mich.), 117 N. W., 910; *Comrade v. Lumber Co.,* 44 Wash., 470. In the last case just cited it was held that an engineer, whose duty it was to give a warning by two blasts of the whistle before starting the machinery in a mill, so that other employees might remove themselves from positions of danger, was not a fellow-servant of a saw-filer, engaged in filing saws during the noon hour while the machinery was at rest, since the giving of such warning was one of the nondelegable duties of the master. *Crow, J.,* speaking for the Court, said: "We are not prepared to say that the engineer would, under no circumstances, be a fellow-servant of respondent and other employees in the mill. But under the facts here disclosed, we hold that in the matter of giving some proper warning before starting the mill, he was a vice principal of the appellant and not a fellow-servant of the respondent." To like effect is the decision in *Illinois Steel Co. v. Ziemkowski,* 220 Ill., 324, where it was held that one charged with the duty of giving warning to the employees of a steel mill when a blast was to be blown, in order that they might reach a place of safety, is a vice principal of the master with respect to the duty of giving such warning.

"The line of demarcation," says *Judge Sanborn* in *St. Louis I. M. & S. R. Co. v. Needham,* 63 Fed., 107, "between the absolute duty of the master and the duty of the servants is the line that separates the work of construction, preparation, and preservation from the work of operation." And this is cited with approval in *Peterson v. New York, etc., R. Co.,* 77 Conn., 351, and 26 Cyc., 1321.

In the case at bar it would seem that the work in which the plaintiff was engaged at the time of his injury was that of preservation and repair, and not merely the execution of a minor detail of operation. However, the character of his work, even according to the above standard, is not to be the sole criterion or determining factor, but this must be considered in connection with that of the other employees. Endeavoring to meet the position thus presented, the defendants say that Southerland's alleged negligence, as well as that of Peterson's, was the result of an act or acts done, or omitted to be done, in the ordinary and regular course of running the mill; and that, as such, they were only the acts of fellow-servants, entailing no further or additional liability on them. Herein lies the difficulty of differentiating between the alleged dereliction, which constitutes the real basis of plaintiff's cause of action, and the other duties of these employees not now essential to our considera-

tion.   The mental confusion which has lead to many discordant adjudications on the subject (*Ell v. N. P. R. Co.,* 1 N. D., 336), doubtless arises out of, and probably is produced by, momentarily losing sight of the plaintiff's safety, and the duty which the defendants owed to him, while thinking of the relation existing between the plaintiff and the other employees.   But on mature reflection, the distinction, which at first may not appear obvious, becomes sharp and clear-cut.   It is true Peterson and Southerland occupied the positions of fireman and helper· or dust-cutter, respectively, and they were charged with the duty of running the engines and boilers.   But when such operation, or any·part thereof, had been stopped or suspended, in order that the plaintiff might do his work, the obligation to keep such idle machinery stationary was one of the primary duties which the defendants owed to the plaintiff in undertaking to furnish him a reasonably safe place to work.   The proximate cause of the plaintiff's injury, therefore, was the alleged negligent failure of the defendants to keep the machinery still (just the reverse of operation); and this clearly related to the duty of maintaining and preserving for the plaintiff a reasonably safe place in which to do his work.   "The positive, personal, and nondelegable duty of a master to provide a reasonably safe place in which, and reasonably safe appliances with which to work, or a reasonably safe method of doing the work, is a duty of construction and provision, and not of operation." *Kinnear Mfg. Co. v. Carlisle,* 152 Fed., 933.   Maybe the jury will find that in the instant case this duty has been properly discharged, and maybe not. At any rate, it is a question for them.

It is not necessary to say, nor is it here said, that, under all circumstances, the duty of the master to warn his servant of impending danger is absolute and nonassignable.   This must be determined by the attendant facts and the degree of danger present in each particular case.   It is now the generally accepted rule, however, that when an employee is at work in a place, reasonably safe within itself, but which, by virtue of some independent work done for the master's purposes, becomes highly dangerous, unless the customary warning or signals be given and observed, and the master has committed the execution or observance of such signals or notices to another, the person so charged with this particular duty, in this one respect if no other, is a vice principal and stands as the personal representative of the master.   For his negligence in this regard, in the absence of any contributory negligence on the part of the plaintiff, the master is liable; because such is a positive legal obligation, and he is responsible for its negligent performance, whether he undertakes it personally or delegates it to another. *Nelson v. Navigation Co.,* 26 Wash., 548 (where a steamboat mate united a gang-plank,

but negligently failed to give customary warning before letting it slide
to the deck, to the injury of a deck-hand); *O'Brien v. Page Lumber Co.,*
29 Wash., 537 (applying a "nigger" to a log in a sawmill without warn-
ing to plaintiff "dogger"); *Hough v. Light & P. Co.,* 41 Ore., 531
(failure to warn lineman of turning on electric power); *Postal Tel.
Cable Co. v. Likes,* 225 Ill., 249; *Pautzar v. Mining Co.,* 99 N. Y., 368
(failure of master to warn servant at work in mine of danger from rock
liable to fall); *Fitzgerald v. Twine Co.,* 104 Minn., 138 (plaintiff en-
gaged in splicing a strand of flax on a machine at rest, was injured by
the starting of the machinery without the usual signal); *Hjelm v.
Contracting Co.,* 94 Minn., 169 (injury by a rock thrown by a blast,
through the negligence of the servant to give customary notice); *Lohman
v. Swift & Co.,* 105 Minn., 148 (plaintiff injured by the sudden starting
of machinery which he was engaged in repairing); *Cody v. Longyear,*
103 Minn., 116 (injury caused by the starting of a diamond drill with-
out warning); and finally, *Anderson v. Pittsburg Coal Co.,* 108 Minn.,
455, which contains a valuable and exhaustive discussion of the entire
subject in all of its phases.

It is conceded that the authorities elsewhere on the subject now in
hand, especially those of a comparatively remote date, are in sharp
conflict. "The trend of modern decisions, however, is in favor of hold-
ing the employer liable for a neglect of monitory signals as well as
general instruction." 18 R. C. L., 734. See, also, notes in 46 L. R. A.
(N. S.), 766; 26 L. R. A. (N. S.), 624; 4 L. R. A. (N. S.), 1161, and
*Pressly v. Yarn Mills,* 138 N. C., 410.

In a number of recent cases the liability of the master has been made
to turn not so much upon the difference in rank, or the relation existing
between the employees, as on the character of the negligent act. If the
act were one done, or omitted to be done, in the discharge of some posi-
tive duty, which the master owed to the servant, then the negligence of
the offending servant in this respect was held to be the negligence of
the master. *R. R. v. Baugh,* 149 U. S., 368; *Carter v. McDermott,* 29
App. D. C., 145; 10 L. R. A. (N. S.), 1103, and note. In *Hunter v.
Alderman,* 89 S. C., 502, *Mr. Justice Woods* states the rule as it obtains
in South Carolina as follows: "In determining who are fellow-servants,
the test or rule in this state is not whether the servants are of different
grade, rank, or authority, one of them having power to control and
direct the services of another, but the test is in the character of the act
being performed by the offending servant, whether it was the perform-
ance of some duty which the master owed to the injured servant, the
performance of which duty the master intrusted to the offending serv-
ant." And this is the same test which was laid down by *Mr. Justice*

*Brown* in *Tanner v. Lumber Co.,* 140 N. C., 475: "It follows, therefore, from all the modern authorities that Hitch's liability for Richardson's alleged negligence is not to be determined by the latter's authority to hire and discharge hands, or to purchase and change machinery, and the like. The true test is whether Richardson was intrusted by Hitch with the performance of any duty that Hitch owed to the plaintiff. If he was, and failed to perform it, the defendant is liable." Again, in *Shives v. Cotton Mills,* 151 N. C., 290: "The duty of providing a reasonably safe place in which to work is one of the primary or absolute duties of the master; and when the master delegates the discharge of such duty to a servant, whether he be called foreman, a superintendent, or what not, he represents the master, and the latter will be held responsible for the manner in which the duty is discharged." The same rule also obtains in the District of Columbia: "If an act is done in the discharge of some positive duty of the master to the servant, then negligence in the performance of the act is negligence of the master, notwithstanding that it was performed through another servant." *Spates v. Wells Bros.,* 43 App. D. C., 555.

This is not an abrogation of the fellow-servant rule, but a differentiation of two principles equally well established. As said by *Mr. Justice Holmes* in *Beutler v. Railway,* 224 U. S., 85: "The doctrine as to fellow-servants may be, as it has been called, a bad exception to a bad rule, but it is established, and it is not open to the courts to do away with it upon their personal notions of what is expedient." The Legislature alone may bring about its abolition or change. But because the correct principle of a given case may be difficult of application is no reason why it should not be made. Where the question has become nebulous or beclouded on account of conflicting judicial decisions, it behooves the courts, for this very reason, to search more earnestly and diligently for the truth.

Again, if the negligence of the master concur with that of a fellow-servant in causing an injury, both the master and the servant are liable. *Ammons v. Mfg. Co.,* 165 N. C., 449; *Wade v. Cont. Co.,* 149 N. C., 177. Where the master has negligently failed to perform one of the primary duties which he owes to the servant, and this negligence concurs with that of a coemployee in proximately producing the injury, the master's responsibility therefor is the same as if his negligence were the sole and only cause. *Steele v. Grant,* 166 N. C., 635, and cases there cited.

In the opinion of the Court, written by the *Chief Justice, Ondis v. Tea Co.,* 82 N. J. L., 511, is cited as a persuasive authority. Counsel, in their petition to rehear, make the following criticism, or rather,

observation, of this case: "The work which the plaintiff was set to do was so inherently dangerous, when the machinery was started, that there had been *a rule or custom established to warn the employee before the machinery was started,* and this was not done and the employee was seriously injured. The defendant was held to be liable. This explanation of the case is given in a note in 46 L. R. A. (N. S.), 771, and is manifestly correct." In the cited case, Ondis was bailing water from a pit, which was not dangerous when the machinery was motionless. The starting of the machinery made his position one of immediate peril. It was a rule that this should not be done without notice or warning to him. In the case at bar the plaintiff was repairing a dust-chain, which was not dangerous so long as the machinery was at rest. The starting of the engine made his position one of immediate peril. There is evidence that, according to the rule, this was not to be done until the plaintiff himself gave the customary notice. In principle there appears to be no difference or dissimilarity in the two cases. The analogy would seem to be complete.

Considering all the facts and circumstances of the instant case, I think the question of liability is one for the jury, under proper instructions from the court, and that the motion for judgment as of nonsuit should have been overruled.

It is needless to add that the foregoing is in no way binding on this Court. It represents my investigation on the petition to rehear, and is intended only as a memorandum of the reasons why I think the petition should be denied. Entirely a work of supererogation and of little service, no doubt; but possibly it will suffice to show that, contrary to the allegations of the petition, the Court has not "misconceived the case by misunderstanding the essential facts." Nothing on the record has been overlooked.

Petition denied.