This is an action for actionable negligence brought by plaintiff against the defendants.
The issues submitted to the jury and their answers thereto, were as follows:
"1. Was the plaintiff injured by the negligence of the defendant, the International Shoe Company, as alleged? Answer: Yes. *Page 381 
2. Was the plaintiff injured by the negligence of the defendant, Robey Small, as alleged? Answer: Yes.
3. Did the plaintiff, by his own negligence, contribute to his injury, as alleged in the answer? Answer: No.
4. What damage, if any, is the plaintiff entitled to recover? Answer: $18,000."
The necessary facts will be stated in the opinion.
At the close of plaintiff's evidence and at the close of all the evidence, the defendants made motions for judgment as in case of nonsuit. C. S., 567. The court below overruled the motions, and in this we see no error.
The plaintiff when injured was an employee and working in the bleach-room of the tannery plant of the defendant, International Shoe Company. It was admitted that the defendant, Robey Small, was foreman and superintendent of said department and the immediate superior of plaintiff, and it was the duty of plaintiff to perform his work under the direction and in accordance with the proper orders of said foreman and superintendent. The evidence on the part of plaintiff tended to show that plaintiff when injured was taking out hides, crops or bellies as they were termed, from the drum or wheel. The machinery that turns the drum or wheel gets its source of power from the motor, which is transmitted by a belt from the motor to the power shaft; from the counter shaft it is again transmitted by a belt to the clutch, and when you engage the clutch, that starts the drum or wheel off, but when the clutch is disengaged the drum or wheel is idle. The power that turns this drum or wheel is brought to it by means of a shaft 2 7/16 inches; this shaft is fitted in a sleeve that is around the shaft and is fastened to the pulley with which the belt runs from the counter shaft and also on this sleeve is fastened one-half of the clutch that is driven by the pulley. When the clutch is disengaged half of the clutch is rotating; the shaft is not rotating, but the sleeve is rotating on the shaft, being pulled by the belt; the drum or wheel is idle and the shaft is idle, but half of the clutch which fastened around the sleeve is rotating. When the other half of the clutch which is fastened on the 2 7/16 inch shaft is engaged with the half which is running on this sleeve, it causes these two, the half that is fastened to the shaft, when that becomes engaged with the other half, causes the 2 7/16 inch shaft to rotate, which in turn having a pin on the end of it, causes the drum or wheel to turn. The sleeve is running around the shaft all the time, while the motor is *Page 382 
running, and the drum or wheel is standing idle. The function of the drums or wheels in the bleach-room were to oil the hides or leather; they are round like a drum, with flat ends; they are about ten feet in diameter and about six feet wide. They are used to put oil, salt, sugar and other ingredients in to treat the hides. After the hides are put in the clutch is shoved in and starts the wheel or drum revolving. The wheel or drum runs for about twenty minutes and then the hides are taken out. About 75 hides are placed in one of these wheels or drums at a time for treatment. When taken out they are handed to a helper and hung up. There is a door on the side of the wheel or drum, about 36 inches high and 42 inches wide, to put the hides in and take them out, and this is shut when the wheel or drum is revolving. The wheels or drums make about 21 revolutions a minute.
The plaintiff was unloading the hides from the wheel or drum about four o'clock in the evening, on 26 May, 1928, when he was injured. At the time this wheel or drum was stopped and the clutch pulled out, a stick was placed on the floor under the wheel or drum to hold it stationary. Plaintiff had taken all the hides out of the wheel or drum except about fifteen. To get these out it was necessary to put his body from his hips up inside the wheel or drum to reach them, and the wheel or drum started to revolve and the door hit him and he was thrown in the wheel or drum, and while it was revolving was thrown out, and rendered unconscious and permanently injured.
The evidence was to the effect that the clutch became engaged without any act on his part, or those working with him. That there was some defect that started the drum revolving. That the clutch became engaged and started up the machinery, by reason of the fact that the sleeve within which the shaft operating the machinery worked, became hot, and tight, and by reason of not being properly oiled, and that this was due to the closing up of the grease channels, which conveyed the oil or grease to the shaft within the sleeve, causing the sleeve to turn with the shaft, and engage the clutch. There was evidence that this sleeve within which the shaft turned, became so tight that it had to be cut in order to remove it from the shaft, and there was also evidence that this sleeve had not been removed and inspected for a period of two years, and that the inside of the sleeve and the shaft was gummed up with dried oil or other material, and that the oil in the cup could not properly reach the inside of the sleeve, as the channels which should have conveyed it, were to some extent closed up. On the other hand, the defendants offered evidence tending to show that the reason for the accident, was that some hard substance had gotten into the oil cup, and from thence through the grease channels into the sleeve, and this without fault on its part, and that this caused friction which rendered the sleeve tight, causing *Page 383 
it to turn with the shaft, and that this caused the clutch to become engaged, and start the machinery, the wheel or drum to revolve, and the plaintiff to be injured.
Among the duties of defendant Small was to oil the machinery by means of the oil or grease cup. When the clutch is disengaged there is a space of about an inch between the two portions thereof, and when these two portions of the clutch are brought together, or engaged, the communicated power turns the shaft and the wheel or drum.
Defendants contended that plaintiff set forth in the complaint that the clutch was defective, which, if established as a fact, would warrant the contention that there was failure to make proper inspection, or failure to make repairs after knowledge or implied notice of such defective condition; whereas, if the actual cause of the "running away" of the wheel or drum was not a defective clutch, but the presence of some hard foreign substance in the grease for which defendants were not accountable, such contention on the part of plaintiff was ill-founded. Further that there was no evidence that the clutch was defective.
Plaintiff specifically alleges in his complaint that the injuries of the plaintiff herein complained of were directly and proximately caused by and due to the negligence and carelessness of the defendants in failing to inspect said oil wheel or drum and clutch and the machinery and appliances connected therewith and in failure to keep said oil wheel or drum andclutch and machinery and appliances in reasonably safe condition and repair
and in ordering the plaintiff, who was ignorant of such defects, to unload said oil wheel or drum when the defendants well knew that such defects existed and that said oil wheel or drum in all probability would suddenly begin to revolve about said penetrating shaft and "run away" and injure the plaintiff, and in failing to furnish and provide for the plaintiff a reasonably safe place in which to work and reasonably safe tools and machinery and appliances with which to work.
We think that, from the admitted facts, the principle of res ipsaloquitur applies.
The case of Ross v. Cotton Mills, 140 N.C. 115 is similar to the case at bar. In the Ross case the plaintiff had stopped the machine. He testified that when it was stationary, "I put my hand over feed roll into heater bars to get cotton out. Machine started by some means and tore off my arm to my elbow, knocked me numb or paralyzed." The Court in that case, at p. 119, said: "To prevent any misconstruction of the circumstances under which or the manner in which this principle applies in the trial of such cause we wish to restate what was said in Womble v. Grocery Co.,135 N.C. 474: `The principle of res ipsa loquitur in such cases carries the question of negligence to the jury, not relieving the plaintiff of the burden of proof, and not raising any presumption *Page 384 
in his favor, but simply entitling the jury, in view of all the circumstances and conditions as shown by the plaintiff's evidence, to infer negligence and say whether upon all of the evidence the plaintiff has sustained his allegation.' It does not in any degree affect or modify the elementary principle that the burden of the issue is on the plaintiff.Walker, J., in Stewart v. Carpet Co., 138 N.C. 60, clearly states the law in this respect: `The doctrine does not dispense with the requirement that the party who alleges negligence must prove the fact, but relates only to the mode of proving it. The fact of the accident furnishes merely some evidence to go to the jury which requires the defendant `to go forward with his proof.' The rule of res ipsa loquitur does not relieve the plaintiff of the burden of showing negligence, nor does it raise any presumption in his favor.'" Stewart v. Carpet Co., supra; Cook v. Mfg. Co., 183 N.C. 55;McAllister v. Pryor, 187 N.C. 837; Murphy v. Power Co., 196 N.C. 484;Bryant v. Construction Co., 197 N.C. 639.
In the Bryant case, supra, at p. 643, we find: "In some of our decisions and expressions res ipsa loquitur, prima facie evidence, prima facie case, and presumption of negligence have been used as practically synonymous. As thus used, each expression signifies nothing more than evidence to be considered by the jury." See Springs v. Doll, 197 N.C. 240; Bowden v.Kress, 198 N.C. 559.
We do not think the learned counsel for defendants seriously disputed the above settled law, from the prayers for instructions which they made and which were given by the court below. Among them were the following: "Although the facts and circumstances which plaintiff contends that he has established are, in the absence of explanation, sufficient and proper to be considered by you as some evidence of negligence on the part of the defendants, yet, even in the absence of any explanation of such facts and circumstances, it would not necessarily be your duty to find that the defendants were guilty of negligence; but defendants have offered evidence tending to explain the facts and circumstances relied on by the plaintiff, and tending to show that the plaintiff's injuries were not proximately caused by any negligence of defendants; and the court instructs you, in this connection, that the law does not cast upon defendants the burden of disproving negligence by a preponderance of evidence, but the burden of proof on that issue still rests upon and remains with the plaintiff, and unless he has satisfied you from all the evidence, and by its greater weight, that the injuries of which he complains were proximately caused by the negligence of the defendants, as alleged in the complaint, it will be your duty to answer the first and second issues No." *Page 385 
The defendants state that several questions are involved:
(1) Does the withdrawal of incompetent or prejudicial testimony received in answer to an incompetent question duly objected to, and an instruction to the jury not to consider it, cure the wrong to the objecting party?"
The accident happened on Saturday.
The question objected to and motion to strike out answer is as follows: "Q. Do you know whether anything had been done to the wheel between Saturday and Monday, of your own knowledge? A. On Monday, it ran away at 12 o'clock." The record discloses that the question was withdrawn and answer ordered stricken from the record, and the jury instructed not to consider it.
It has long been the settled law in this jurisdiction that the court below has the power to withdraw incompetent evidence and instruct the jury not to consider it. Cooper v. R. R., 163 N.C. 150; S. v. Stewart, 189 N.C. at p. 345; S. v. Love, 189 N.C. at p. 773; S. v. Griffin, 190 N.C. at p. 135.
The evidence was promptly stricken from the record, and the jury instructed not to consider it. The record in the present case discloses a very different state of facts from the Yelverton case. See In re Will ofYelverton, 198 N.C. at p. 749. This exception and assignment of error cannot be sustained.
(2) May counsel, in the examination of an expert witness offered by him, assume as facts, matters neither proved nor admitted?
The question and answer, in part, are as follows: "Q. What effect would the fracture of one of the vertebrae there have upon his capacity to lift? A. That bone is part of the vertebrae. It is just a general fracture. I said, in my opinion that there was a fracture of the fifth vertebrae besides the displacement to it. I think this injury would almost completely incapacitate him to work."
Dr. Kirksey testified, without objection: "This is the picture I had Miss Powell to make (examining). The picture showed a fracture of the tip of the transverse process of the third lumbar vertebrae on the left side, or in words the jury may understand, it shows a fracture of the little bone extending out from the bottom of the back bone. (Exhibiting and explaining picture to jury.) Here is the bone that extends out from the spinal column, extends out about an inch or an inch and a half, and the fracture is about a half inch from the end. Then there is the fifth, or last, vertebrae, that is a displacement of that vertebrae forward in a slight rotation towards the right." We think the exception and assignment of error were not well taken.
(3) Does the X-ray photograph or film import verity, or is its competency as well as its probative value dependent upon the manner of its making and interpretation? *Page 386 
The question and answer are as follows: "Q. Speaking of a patient fooling you, Doctor, do you know of any way by which an X-ray picture can fool a doctor? A. I do not, if you see it, there is no way to fool you."
The plaintiff had theretofore shown by the testimony of his witness, Miss Clarissa Powell, that the X-ray pictures of the spinal column were properly made on a standard machine at the instance of Dr. Kirksey, the plaintiff's witness, and at the instance of Dr. Phifer, the defendants' witness. Miss Powell had been engaged for nine years in making X-ray pictures for various hospitals and physicians, and in such work had used all kinds of X-ray machines. Dr. Kirksey had had experience in reading and interpreting X-ray pictures. The testimony was competent and merely amounted to the statement of the medical witness that an X-ray picture, properly taken, accurately produces a picture of human bones.
A witness who is an expert need not necessarily be a technical specialist. Pridgen v. Gibson, 194 N.C. 289.
In Liles v. Pickett Mills, 197 N.C. p. 772, we find the following: "The judge expressed his willingness to admit the photograph (X-ray) in evidence provided expert testimony was introduced satisfactorily explaining the photograph to the jury, but held upon the evidence offered that the witness had not qualified himself as sufficiently expert in questions of anatomy to testify in reference to the proposed explanation."
From the facts appearing in this case, we think the evidence competent. The X-ray pictures are not like the man that looks in a glass.
"For if any be a hearer of the word, and not a doer, he is like unto a man beholding his natural face in a glass:
For he beholdeth himself, and goeth his way, and straightway forgetteth what manner of man he was." James 1:23, 24.
In Welch v. Coach Line, 198 N.C. p. 131, is the following: "It is the common practice to receive maps, diagrams, photographs, and pictures for the purpose of giving a representation of objects and places which generally cannot be conveniently described by witnesses. Especially is this true of X-ray pictures which usually require an explanation by parol."Lupton v. Express Co., 169 N.C. 671.
We do not think this exception and assignment of error can be sustained.
(4) Should a verdict be allowed to stand, rendered upon a charge containing statements as to contentions with respect to facts and instructions as to matters of law — favorable to the prevailing party — not based on evidence?
The exception was to the following part of the charge: "Now, the court charges you, that if you shall find, by the greater weight of the *Page 387 
evidence, that the defendants in this case failed to exercise that care which an ordinarily prudent person, surrounded and situated as the defendants were on that occasion, would have exercised, in furnishing plaintiff a reasonably safe place in which to do his work, or failed to exercise reasonable care — the same sort which an ordinarily prudent person surrounded and situated as the defendants were would have exercised — in furnishing a machine in general use by those engaged in that sort of business, or failed to exercise due care to keep it in a reasonably safe condition, and then if you should further find by the greater weight of the evidence that such failure was the proximate cause of the plaintiff's injury, then you should answer the first and second issues, Yes. The court had just prior charged: "The defendants are not insurers. The law does not require that the defendants should guarantee that the plaintiff would not get hurt; the law did not require the defendants to guarantee the plaintiff that that machine would not turn, nor to guarantee that the clutch would not become engaged. It was not an insurer that the thing would not happen."
We see nothing prejudicial in the use of the word "general" instead of "such as are approved and in general use," in the charge. Lacey v. HosieryCo., 184 N.C. 19.
As heretofore stated, we think the principle of res ipsa loquitur
applies and from all the facts and circumstances in this case we see no error in the charge, especially when taken as a whole and in connection with defendants' prayers for instructions given by the court below, which cover the law applicable to the case as contended for by defendants. We must not forget that circumstantial as well as direct evidence applies to a civil as well as a criminal action. The charge can be based on both in the present case. This exception and assignment of error cannot be sustained.
Nor can we see any error, considering the charge as a whole. The plaintiff was entitled to more than was given, as the principle of res ipsaloquitur applied, as before explained, on the facts in this case.
It is well settled law that the employer is required to provide for his employees in the exercise of proper care a reasonably safe place to work and to supply them with machinery, implements and appliances reasonably safe and suitable for the work in which they are engaged, and such as are approved and in general use in plants and places of like character, and an employer is also required to keep such machinery in such condition as far as this can be done in the exercise of proper care and diligence. Street v.Coal Co., 196 N.C. 178; West v. Mining Co., 198 N.C. 150. When machinery suddenly starts up, as in this case, by reason of the clutch which turns on the power becoming engaged and this, without the intervention of human agency, and such result does not *Page 388 
occur when the clutch and machinery is in proper condition, the rule resipsa loquitur applies.
The numerous exceptions and assignments of error not here considered, made during the trial to the admission and exclusion of evidence, we have examined carefully and see no new or novel proposition of law presented. The evidence as to the extent of the injury was conflicting.
Defendants, on cross-examination of Dr. J. J. Kirksey, elicited the following: "Q. And you know, as a fact, has it not been your observation, that men, much more seriously handicapped than this plaintiff appears to be, have been able to work and earn a living by manual exertion, not depending upon their wits or brains? A. I don't know of anybody with a broken back that is working. I don't happen to know of a case with this type of injury. I will say, that he can walk while he cannot do manual labor. There is a great deal of difference in being able to walk and in doing manual labor. There might possibly, by some improvement in the future, but I don't see how there can be a complete recovery. He will never be as good as he was before the injury, although there might be a slight improvement."
There was other evidence bearing on the permanency of plaintiff's injury and his incapacity for work. Plaintiff earned $3.67 a day. He testified in part: "Before my injury, I was always stout and healthy and able to do anything that came my way. I hardly ever lost a day from work. . . . Since my injury, I have not earned anything, only what they gave me at the tannery. I have not been able to work to earn anything. My general health and strength before the injury was good, but I have not had any since. When I go to bed at night, my back hurts so that I cannot sleep, rest or anything else. The pain is mostly in the small of my back, in what the doctor calls the lumbar region. I cannot earn a living except through the mercy of the people. I have always earned a living by working before the injury. I have not been educated to do any kind of work except manual work."
The briefs of the learned counsel for the parties go into every phase of the controversy. We cannot see any reversible or prejudicial error on the record. The court below not only fully charged the law as favorable as defendants could expect, but gave all the prayers for instructions asked for by defendants and drawn by them to present the most favorable view for defendants.
The issues of fact were found by the jury in favor of plaintiff, and we can see no error in law.
No error. *Page 389